GAY v SELECT SPECIALTY HOSPITAL

Docket No. 301064. Submitted October 11, 2011, at Lansing. Decided
January 31, 2012, at 9:00 a.m.

Patricia Gay, personal representative of the estate of Dolores M.
Wright, deceased, brought an action in the Calhoun Circuit Court
against Select Specialty Hospital and Battle Creek Health System,
alleging malpractice by nurses on the hospital's staff. The court,
Allen L. Garbrecht, J., entered an order dismissing the claims
against Battle Creek Health System. The hospital moved to strike
plaintiff's proposed nursing expert, Kathleen Boggs, R.N., on the
basis that Boggs did not devote a majority of her professional time
to the active clinical practice of nursing or to the instruction of
nursing students in an accredited health professional school or
accredited residency or clinical research program in the year
immediately preceding the date of the decedent's fall in the
hospital. The hospital alleged that Boggs was not qualified to sign
the affidavit of merit under MCL 600.2169(1)(b) and sought
dismissal of the action. The court determined that Boggs did not
meet the qualifications for an expert under the statute and
granted the motion to strike Boggs as an expert. The court also
determined that plaintiff did not timely propose an alternate
expert witness and granted the hospital's motion to strike plain-
tiff's supplemental witness list. The court then dismissed the
action on the basis that plaintiff did not have an expert to establish
the standard of care. Plaintiff appealed.

The Court of Appeals *held*:

1. Although trial courts have considerable discretion in deter-
mining whether a witness is qualified to testify as an expert, trial
courts must nevertheless accurately apply the law in exercising
their discretion. A trial court necessarily abuses its discretion
when it premises a ruling on an erroneous view of the law or on a
clearly erroneous assessment of the evidence.

2. The evidence concerning Boggs's qualifications was undis-
puted; therefore, whether Boggs met the requirements stated in
MCL 600.2169(1)(b) was a matter of applying the undisputed facts
to the proper interpretation of the statute.

3. The trial court determined that Boggs did not spend any

portion of her professional time in either the active clinical practice of nursing or in the instruction of nurses at an accredited health professional school or accredited residency or clinical research program despite the fact that there was plain and unrebutted evidence that Boggs engaged in both the active clinical practice of nursing and the instruction of nurses at an accredited residency or clinical research program.

4. The trial court's determination that Boggs did not spend any time in the active clinical practice of nursing was based on the fact that Boggs supervised the orientation of nurses and was not directly involved in the care of patients. In order to be engaged in an active clinical practice, a medical professional's practice must involve practice in a clinical setting, which usually means a setting where patients are treated. A professional can be involved in the treatment of patients in a variety of ways in a clinical setting without directly interacting with the patients. The fact that many nurses will physically interact with patients does not mean that a nurse who is indirectly involved in the care of patients is not engaged in the active clinical practice of nursing. The word "active" in the phrase "active clinical practice" cannot be construed to require that the professional physically interact with patients. The word "active" must be understood to mean that, as part of his or her normal professional practice at the relevant time, the professional was involved—directly or indirectly—in the care of patients in a clinical setting. The undisputed evidence showed that Boggs spent 25 percent of her professional time at the time of the occurrence at issue engaged in the active clinical practice of nursing. The trial court erred when it determined that Boggs did not spend any amount of her professional time engaged in the active clinical practice of nursing. Boggs's work in orienting nurses at the hospital amounted to the active clinical practice of nursing within the meaning of MCL 600.2169(1)(b). Therefore, the trial court's determination to the contrary must have been premised on an erroneous interpretation of the statute and was an abuse of discretion.

5. The trial court erred by determining that Boggs did not spend any of her professional time engaged in qualified instruction. Boggs testified that she spent 50 percent of her professional time teaching at the hospital for an accredited residency program. This time and the time engaged in the active clinical practice of nursing clearly constitutes more than 50 percent of her professional time and met the professional-time requirement of the statute.

6. The Legislature's statement that a professional may meet the time requirement by devoting a majority of his or her time to the instruction of students is not a requirement that the professional must actually spend a majority of his or her time instructing students. A teacher's activities preparing for class, maintaining familiarity with new and evolving professional techniques, and participating in meetings designed to further the educational process are activities devoted to the instruction of students. The trial court abused its discretion by determining that Boggs did not devote any of her time to the instruction of students.

7. Boggs met the professional-time requirement of MCL 600.2169(1)(b) and was qualified to testify. The order striking Boggs as a witness is vacated. The judgment and order dismissing the suit is reversed and the case is remanded for further proceedings.

Reversed and remanded.

Whitbeck, J., dissenting, stated that the trial court properly determined that Boggs did not meet the statutory qualifications to testify regarding the appropriate standard of care, did not err by refusing plaintiff's request to substitute Jean Hurynowicz, R.N., as plaintiff's expert witness, and did not abuse its discretion by ordering dismissal with prejudice because there was no remaining time available under the wrongful death saving period, MCL 600.5852. Working in a clinical setting merely overseeing employees who actually treat the patients is too removed from the type of experience contemplated by the statutory requirement regarding "active clinical practice." The time spent by Boggs orienting new nurses to their units did not qualify as "active clinical practice" because it did not involve the active care of patients. The 45 percent of Boggs's professional time spent instructing students in some capacity is below the requisite "majority," or more than 50 percent, necessary to satisfy the statute. The trial court's refusal to allow the substitution of Hurynowicz, an entirely new expert witness, only 50 days before trial was not an abuse of discretion. The trial court correctly recognized that plaintiff's filing of the complaint and affidavit of merit did not toll the wrongful death saving period, MCL 600.5852, and that, because the wrongful death saving period had expired, the proper remedy for plaintiff's failure to submit a conforming affidavit of merit was dismissal with prejudice. The judgment and order dismissing the action should be affirmed.

1. EVIDENCE — ERRONEOUS INTERPRETATIONS OR APPLICATIONS OF LAW — ABUSE OF DISCRETION.

A trial court necessarily abuses its discretion when it admits or excludes evidence on the basis of an erroneous interpretation or application of law.

2. NEGLIGENCE — MEDICAL MALPRACTICE — EXPERT WITNESSES — WORDS AND PHRASES — ACTIVE CLINICAL PRACTICE.

A medical professional's practice must involve practice in a clinical setting in order for the professional to be engaged in an "active clinical practice" for purposes of MCL 600.2169(1)(b); a medical professional can be involved in the treatment of patients in a variety of ways in a clinical setting without directly interacting with the patients; the word "active" means that, as part of the professional's normal professional practice at the relevant time, the professional was involved, directly or indirectly, in the care of patients in a clinical setting.

3. NEGLIGENCE — MEDICAL MALPRACTICE — NURSES — ACTIVE CLINICAL PRACTICE OF NURSING.

A nurse who supervises other nurses in a hospital is practicing nursing in a clinical setting for purposes of the professional-time requirement of MCL 600.2169(1)(b) even though he or she does not directly treat specific patients.

4. NEGLIGENCE — MEDICAL MALPRACTICE — EXPERT WITNESSES — INSTRUCTION OF STUDENTS.

A person may be qualified to testify as an expert on the standard of care in a medical-malpractice action if during the year immediately preceding the date of the occurrence that is the basis for the claim or action the person devoted a majority of his or her professional time to the instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed; time spent preparing for class, maintaining familiarity with new and evolving professional techniques, and participating in meetings designed to further the educational process is time devoted to the instruction of students (MCL 600.2169[1][b][*ii*]).

*Blaske & Blaske, P.L.C.* (by *Thomas H. Blaske*), for Patricia Gay.

*Magdich & Associates, PC* (by *Karen W. Magdich* and
*Jennifer R. Anstett*), for Select Specialty Hospital.

Before: M. J. KELLY, P.J., and FITZGERALD and WHITBECK,
JJ.

M. J. KELLY, P.J. In this nursing malpractice case,
Patricia Gay, as personal representative of the estate of
Dolores M. Wright, deceased, appeals by right the trial
court's order dismissing Gay's suit against defendant
Select Specialty Hospital.[1] On appeal, the primary issue
is whether the trial court erred when it determined that
Gay's proposed nursing expert, Kathleen Boggs, R.N.,
did not meet the qualifications required of experts who
propose to testify concerning the applicable standard of
care. See MCL 600.2169(1). We conclude that the trial
court erred when it determined that Boggs did not meet
the qualifications stated under MCL 600.2169(1). Be-
cause Boggs was qualified to testify about the standard
of care, the trial court further erred when it dismissed
Gay's claim on the ground that Gay did not have an
expert to establish the standard of care for her malprac-
tice claim. Accordingly, we reverse and remand for
further proceedings.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Dolores Wright was admitted to Select Specialty
Hospital to treat her rheumatoid arthritis—including
associated rheumatoid lung disease—in October 2003.
Wright responded well to the treatments and, on Thurs-
day, November 13, 2003, Wright learned that she would
be discharged from the hospital on the following Mon-

---

[1] The trial court issued an order dismissing Gay's claims against
defendant Battle Creek Health System in April 2009. That order is not at
issue on appeal.

day. However, the next day a nurse assisted Wright to a commode, but left her unattended. When her phone rang, Wright reached for it and fell from the commode. She injured her head, fractured her shoulder, and died two days later.

In November 2008, Patricia Gay, acting as the personal representative of Dolores Wright's estate, sued the hospital. In the complaint, Gay alleged that, in order to comply with the standard of care applicable to Wright's conditions, the hospital's nursing staff had to remain by Wright's side and assist her whenever she was out of bed. As such, the nurse should not have left Wright unattended on the commode and had the nurse not done so, she could have prevented Wright's fall. Gay alleged that the fall was a direct and proximate result of the hospital's nursing staff's negligence and that the fall ultimately led to Wright's death. Gay submitted Boggs' affidavit of merit in support of the complaint. In the affidavit, Boggs averred that the nursing staff should have assessed Wright for fall-risk on each shift and, given Wright's frailty, should not have left her unattended while she used the commode.

The hospital alleged that its nursing staff was not negligent. Rather, Wright's condition had improved significantly and immediately before Wright reached for the phone, a nurse had come in and instructed her to wait for assistance.

Approximately two years later, in September 2010, the hospital moved to strike Boggs as an expert and dismiss Gay's complaint with prejudice. The hospital argued that the affidavit of merit was insufficient because Boggs was not qualified to testify as an expert. More specifically, the hospital argued that Boggs did not devote a majority of her professional time to the active clinical practice of nursing or to the instruction of

nursing students in an accredited health professional school or accredited residency or clinical research program in the year immediately preceding the fall. As such, the hospital argued that Boggs was not qualified to sign the affidavit of merit under MCL 600.2169(1)(b) and that the trial court had to dismiss the case.

After hearing oral arguments on the motions, the trial court determined that Boggs did not meet the expert qualifications stated under MCL 600.2169(1)(b). Accordingly, the trial court granted the hospital's motion to strike Boggs as an expert witness. The trial court also determined that Gay did not timely propose an alternate expert witness. Therefore, it granted the hospital's motion to strike Gay's supplemental witness list. The trial court then dismissed the case with prejudice. Gay now appeals.

## II. STANDARDS OF REVIEW

"Ordinarily, the qualification of competency of expert witnesses is a matter for the discretion of the trial judge . . . ." *Siirila v Barrios*, 398 Mich 576, 591; 248 NW2d 171 (1976). By reviewing a trial court's decision concerning the admission of expert testimony under this highly deferential standard, appellate courts recognize that the trial court's assessment of the proposed expert and his or her testimony typically involves a complex balancing of various factors. See, e.g., *Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 592-595; 113 S Ct 2786; 125 L Ed 2d 469 (1993) (noting that, in reviewing the admission of expert testimony, trial courts must consider a variety of factors—including being mindful of other applicable rules—to determine the evidentiary relevance and reliability of the proposed testimony). The same is true when examining a witness's qualifications; the court must weigh the witness's "knowledge, skill, experience, train-

ing, [and] education" and determine whether—on the basis of those factors—the witness is sufficiently qualified to offer expert testimony on the area at issue. MRE 702. There is always the concern that jurors will disregard their own common sense and give inordinate or dispositive weight to an expert's testimony. See *People v Peterson*, 450 Mich 349, 374; 537 NW2d 857 (1995) (noting the potential that a jury might defer to an expert's seemingly objective view of the evidence). For that reason, trial courts must—at every stage of the litigation—serve as the gatekeepers who ensure that the expert and his or her proposed testimony meet the threshold requirements. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 782; 685 NW2d 391 (2004). This includes determining whether the witness's expertise fits the nature of the witness's proposed testimony. *Id.* at 789.

Although trial courts have considerable discretion in determining whether a witness is qualified to testify as an expert, see *People v Whitfield*, 425 Mich 116, 123; 388 NW2d 206 (1986), trial courts must nevertheless accurately apply the law in exercising their discretion. See *Gilbert*, 470 Mich at 780 ("While the exercise of this gatekeeper role is within a court's discretion, a trial judge may neither 'abandon' this obligation nor 'perform the function inadequately.' "), quoting *Kumho Tire Co Ltd v Carmichael*, 526 US 137, 158-159; 119 S Ct 1167; 143 L Ed 2d 238 (1999) (Scalia, J., concurring); see also *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999) (noting that a trial court necessarily abuses its discretion when it premises its decision on a misapplication of law). They may not, for example, apply an "overly narrow test of qualifications" in order to preclude a witness from testifying as an expert. *Whitfield*, 425 Mich at 123. And this Court reviews de novo whether the trial court correctly selected, interpreted, and applied the law. See *Adair v Michigan*, 486 Mich

468, 477; 785 NW2d 119 (2010). Moreover, when a trial court admits or excludes evidence on the basis of an erroneous interpretation or application of law, it *necessarily* abuses its discretion. *Kidder v Ptacin*, 284 Mich App 166, 170; 771 NW2d 806 (2009); *Cooter & Gell v Hartmarx Corp*, 496 US 384, 405; 110 S Ct 2447; 110 L Ed 2d 359 (1990) (stating that a trial court necessarily abuses its discretion when it premises its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence).

### III. EXPERTS AND THE APPLICABLE STANDARD OF CARE

In order to establish the malpractice claim at trial, Gay had to present evidence concerning the standard of care applicable to the nursing staff involved in Wright's care. See *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). And she could do so only through an expert's testimony. See *Gonzalez v St John Hosp & Med Ctr (On Reconsideration)*, 275 Mich App 290, 294; 739 NW2d 392 (2007). A witness must meet certain basic qualifications in order to testify as an expert. See, e.g., MRE 702. In addition, our Legislature has determined that a "person shall not give expert testimony on the appropriate standard of practice or care" in an action alleging medical malpractice unless that person meets certain requirements. One requirement is that the person must have "during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time" to either "active clinical practice" or the instruction of "students in an accredited health professional school or accredited residency or clinical research program" or both, where the active clinical practice or instruction is "in the same health profession in which the party against whom or on whose behalf the testimony is offered is

licensed . . . ." MCL 600.2169(1)(b)(*i*) and (*ii*). Finally, the party proposing to call an expert bears the burden to show that his or her expert meets these qualifications. See *Clerc v Chippewa Co War Mem Hosp*, 477 Mich 1067, 1067-1068 (2007).

Here, Gay retained Boggs to offer an expert opinion about the applicable standard of care. However, after the hospital deposed Boggs, it moved to strike her as a witness and dismiss Gay's case. The hospital argued that Boggs could not testify about the applicable standard of care because she did not meet the professional-time requirement stated under MCL 600.2169(1)(b). Specifically, the hospital presented Boggs's deposition testimony in which it claimed she admitted that she spent the majority of her professional time serving as an administrator. Moreover, because the time limit for adding witnesses had passed, the hospital argued that Gay should be precluded from adding an expert to testify regarding the applicable standard. Finally, the hospital maintained that the trial court had to dismiss Gay's suit because Gay would not be able to establish this element of her claim.

The trial court heard arguments on the hospital's motion and determined that Gay had not met her burden to show that Boggs met the professional-time requirement:

> Ah, here's the thing: I've reviewed your briefs, and I am not, ah, convinced that this witness meets the threshold requirements . . . to offer standard of care testimony. That's based on what's presented to me . . . including her affidavit. . . . The statute's clear . . . and she simply doesn't meet the requirements.
>
> As indicated, I don't think there's any argument that she [was] not actively in a clinical practice during the relevant time period, the year prior to the occurrence, and based on what's presented to me here, she was not an

instructor of students in an accredited professional school
during that period of time, either.

For that reason, the trial court granted the hospital's
motion to strike Boggs as a witness. It also determined
that Gay should not be permitted to add an expert
witness and, because Gay would not be able to establish
the applicable standard of care at trial, it also concluded
that it must dismiss the case.

The evidence concerning Boggs's qualifications was
undisputed. As such, whether Boggs met the require-
ments stated under MCL 600.2169(1)(b) was—and
remains—a matter of applying the undisputed facts to
the proper interpretation of that statute. Accordingly, if
Boggs met the qualifications stated under MCL
600.2169(1)(b) as a matter of law, then the trial court
necessarily abused its discretion when it struck her as a
witness on the ground that she did not meet those
requirements. *Kidder*, 284 Mich App at 170.

The trial court determined that Boggs did not spend
*any* portion of her professional time in either the active
clinical practice of nursing or in the instruction of
nurses at an accredited health professional school or
accredited residency or clinical research program. Fur-
ther, the trial court made this determination despite the
fact that there was plain—and unrebutted—evidence
that Boggs engaged in both the active clinical practice of
nursing and instructed nurses at an accredited resi-
dency or clinical research program.

### A. ACTIVE CLINICAL PRACTICE

During the relevant period, Boggs served as the
director of education at a hospital. Boggs testified at her
deposition that she oversaw education for all support
staff, which included the nursing staff. She specifically

denied that her job was a "desk job" even though there "was a lot of desk [time]." She explained: "I did all the orientation, I did all the CPR classes, I did continuing education, sat on a lot of committees, oriented nurses, new nurses to their units." Further, when asked whether she took an "active role in patient care" she stated that she did, but only "as far as I was working with the new nurses on their nursing unit." She said that her work in orienting the nurses involved 25 percent of her professional time.

Despite this testimony, the trial court determined that Boggs did not spend *any* time in the active clinical practice of nursing. The trial court apparently disregarded this aspect of Boggs's professional work because Boggs supervised the orientation of nurses and was not directly involved in the care of patients. But the Legislature did not impose any such requirement. Rather, the Legislature provided that a witness might testify as an expert if he or she spent the majority of his or her time in an "active clinical practice . . . ." Because the Legislature did not choose to define the phrase "active clinical practice," this phrase must be given its ordinary meaning. See *Wolfe-Haddad Estate v Oakland Co*, 272 Mich App 323, 325; 725 NW2d 80 (2006), citing MCL 8.3a.

The ordinary meaning of "clinical practice" is the practice of one's profession in a clinical setting. See *Random House Webster's College Dictionary* (2d ed, 1997) (defining "clinical" to mean "pertaining to a clinic" or "concerned with or based on actual observation and treatment of disease in patients rather than experimentation or theory" and defining "practice" to mean "to pursue a profession, [especially] law or medicine"). Thus, in the case of a medical professional, in order to be engaged in an active clinical practice, the profession-

al's practice must involve practice in a clinical setting, which usually means a setting where patients are treated. But this is not the equivalent of stating that the professional must directly interact with patients, which is what the trial court apparently understood when it disregarded Boggs's work overseeing the orientation of new nurses for the hospital. A medical professional can be involved in the treatment of patients in a variety of ways in a clinical setting without directly interacting with the patients. And the fact that many—if not most—nurses will physically interact with patients in the practice of their professions does not mean that a nurse who is indirectly involved in the care of patients is not engaged in the "active clinical practice" of nursing. Giving the phrase "active clinical practice" its ordinary meaning, the key question is whether Boggs was actively engaged in the profession of nursing in a clinical setting.

We also cannot agree with the dissent's conclusion that the word "active"—as used in the phrase "active clinical practice"—must be understood to impose a requirement that a nurse directly treat patients in order to be engaged in the "active clinical practice" of nursing. Although it has the sense of being "marked by or disposed to direct involvement or practical action," the adjective "active" can also mean "engaged in action or activity," or "characterized by current activity, participation, or use." *Random House Webster's College Dictionary* (2d ed, 1997). In imposing professional-time requirements on expert witnesses, the Legislature intended to address a perceived problem with full-time professional witnesses who would ostensibly testify to whatever someone paid them to testify about. See *McDougall v Schanz*, 461 Mich 15, 25 n 9; 597 NW2d 148 (1999). And, in context, it is plain that the Legislature used the word "active" to ensure that the profes-

sional's practice involved actual, day-to-day performance in a clinical setting. Accordingly, a professional who is semiretired, but who retains privileges in a clinical setting, might be said to no longer have an "active" clinical practice. Similarly, a professional who has a "clinical practice" but who leaves the day-to-day operation of the practice to partners or is otherwise uninvolved with the day-to-day practice is also not involved in an "active clinical practice." But the word "active" cannot be construed in this context to require that the professional physically interact with patients. Rather, the word "active" must be understood to mean that, as part of his or her normal professional practice at the relevant time, the professional was involved—directly or indirectly—in the care of patients in a clinical setting.

Here, Boggs testified that she spent one-quarter of her professional time orienting nurses to their units. Although the hospital did not ask Boggs to elaborate on what her orientation activities included, the act of orienting nurses within a hospital involves some degree of explaining, coordinating, and instructing nurses regarding the proper care of their patients. And explaining, coordinating, and instructing nurses about the proper care of patients in a clinical setting necessarily involves—albeit indirectly—the treatment of patients.[2] Accordingly, it was undisputed that Boggs spent 25 percent of her professional time at the time of the

---

[2] On this point we must disagree with the dissent: a nurse who supervises other nurses in a hospital *is* practicing nursing in a clinical setting even though he or she does not directly treat specific patients. Indeed, if the supervising nurse were negligent in the supervision or training of his or her staff and that negligence led to an injury, he or she might be liable for malpractice even though he or she never physically touched the patient. It therefore seems inapposite to state that the supervision and training of nurses at a hospital does not amount to the active clinical practice of nursing.

occurrence at issue engaged in the "active clinical practice" of nursing. See MCL 600.2169(1)(b).[3]

Even if one were to disregard the ordinary understanding of the phrase "active clinical practice," Boggs unequivocally testified that she took an active role in the care of patients while orienting nurses. Thus, even under a narrow understanding of the phrase "active clinical practice," Boggs spent some portion of this 25 percent of her professional time in active clinical practice. Moreover, common sense dictates that some portion of this percentage involved educating the nurses about their duties and the appropriate care of patients. Because Boggs averred that the hospital was accredited,[4] these educational activities should also be counted toward the professional-time requirements required under MCL 600.2169(1)(b). It is, therefore, evident that the trial court erred when it determined that Boggs did not spend *any* amount of her professional time engaged in the "active clinical practice" of nursing.

Boggs's work in orienting nurses at the hospital amounted to the active clinical practice of nursing

---

[3] If only the time spent administering to patients counted towards the professional-time requirements stated under MCL 600.2169(1)(b), one would be forced to consider whether any nurse could meet the requirements. Presumably, every nurse must take lunch and bathroom breaks, fill out paperwork, attend staff meetings, and otherwise participate in a variety of activities that do not involve directly administering to patients. Nevertheless, these activities are an integral part of working in a clinical setting.

[4] The hospital claims on appeal that Boggs did not actually teach in an accredited nursing residency or clinical program. However, Boggs averred that she taught at an "accredited facility" and for an "accredited clinical research program[]." When her averments are considered as a whole, she plainly stated that her teaching qualified because she taught in an accredited residency or clinical program. And, in the absence of evidence to contradict her averments at the time of the motion, the trial court clearly erred to the extent that it found that her institution was not properly accredited.

within the meaning of MCL 600.2169(1)(b). Hence, the trial court's determination that Boggs' professional work did not involve any amount of active clinical practice must have been premised on an erroneous interpretation of MCL 600.2169(1)(b). Therefore, it abused its discretion when it struck Boggs under this erroneous understanding. *Kidder*, 284 Mich App at 170.

### B. THE INSTRUCTION OF STUDENTS

Similarly, the trial court erred when it determined that Boggs did not spend any of her professional time engaged in qualified instruction. A witness may be qualified to testify as an expert on the standard of care if he or she instructs "students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed . . . ." MCL 600.2169(1)(b)(*ii*). Here, Boggs testified that she spent 50 percent of her professional time teaching at the hospital, which teaching—as already noted—she averred was for an accredited residency program. This, when coupled with her time engaged in the active clinical practice of nursing, clearly constitutes more than 50 percent of her professional time and, therefore, meets the professional-time requirement stated under MCL 600.2169(1)(b). See *Kiefer v Markley*, 283 Mich App 555, 558-559; 769 NW2d 271 (2009).

Further, although Boggs later averred that she spent some portion of her time involved in administrative activities, we do not agree with the trial court's apparent conclusion that the time spent on administrative activities did not qualify as time devoted to the "instruction of students . . . ." The Legislature provided that the professional must have "devoted . . . his or her

professional time" to the "instruction of students . . . ."
MCL 600.2169(1)(b)(*ii*). The Legislature's statement that
the professional may meet the time requirement by de-
voting the majority of his or her time to the instruction of
students is not the same as stating that the professional
must actually spend a majority of his or her time instruct-
ing students. We sincerely doubt that any instructor
spends the majority of his or her professional time in the
actual instruction of students. It is commonly understood
that a person who teaches—and especially with regard to
persons who teach a profession—must spend significant
time preparing for class, maintaining familiarity with new
and evolving professional techniques, and participating in
meetings designed to further the educational process.
Such activities are no less "devoted" to the "instruction of
students" than the time actually spent in front of the
students demonstrating a procedure or lecturing about
the proper standards of care. As such, when it found that
Boggs did not devote any portion of her professional time
to the instruction of students, the trial court plainly relied
on an erroneous understanding of MCL 600.2169(1)(b).
As such, it necessarily abused its discretion. *Kidder*, 284
Mich App at 170.

### IV. CONCLUSION

On the basis of Boggs's testimony and averments, we
conclude that Boggs spent significantly more than 50
percent of her professional time in the active clinical
practice of nursing or instructing nursing students.[5]

---

[5] Boggs testified that she spent 50 percent of her time teaching and
another 25 percent of her time in the active clinical practice of nursing.
Thus, she met the more than "majority" professional-time requirement.
See *Kiefer*, 283 Mich App at 558-559. We note that, even if one were to
assume that Boggs only spent 35 percent of her time engaged in qualified

Because Boggs met the professional-time qualification stated under MCL 600.2169(1)(b) as a matter of law, the trial court necessarily abused its discretion when it determined that she was not qualified under that statute. *Kidder*, 284 Mich App at 170. Moreover, because Boggs can testify regarding the standard of care, the trial court erred when it determined that it had to dismiss Gay's case because Gay would not be able to establish an essential element of her claim.

For these reasons, we reverse the trial court's judgment and order dismissing the suit, vacate its October 2010 order striking Boggs as a witness in its entirety, and remand for further proceedings.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, Gay may tax her costs. MCR 7.219(A).

FITZGERALD, J., concurred with M. J. KELLY, P.J.

WHITBECK, J. (*dissenting*). In this nursing malpractice case against Select Specialty Hospital, the majority decision reverses the trial court's order dismissing the action by Patricia Gay, personal representative of the estate of Dolores M. Wright, deceased. I respectfully dissent. Unlike the majority, I believe that the trial court properly determined that plaintiff's originally proposed nursing expert, Kathleen Boggs, R.N., did not meet the requisite MCL 600.2169(1) qualifications to testify regarding the appropriate standard of care. I also believe that the trial court did not err by refusing

teaching, when the 25 percent of her time that she testified that she spent engaged in the active clinical practice of nursing is added to that time, she still meets the professional-time requirement stated under MCL 600.2169(1)(b).

plaintiff's request to substitute Jean Hurynowicz, R.N., as plaintiff's expert witness. And, further, I believe that the trial court did not abuse its discretion by ordering dismissal with prejudice because there is no remaining time available under the wrongful death saving period.[1] Accordingly, I would affirm.

### I. EXPERT'S PROFESSIONAL TIME UNDER MCL 600.2169

The salient question is whether Nurse Boggs devoted sufficient time in the active clinical practice of nursing or instruction in nursing to qualify as an expert witness under MCL 600.2169. The majority concludes that Nurse Boggs did meet the MCL 600.2169 qualifications because she "spent significantly more than 50 percent of her professional time in the active clinical practice of nursing or instructing nursing students." I disagree.

MCL 600.2169 provides, in pertinent part, as follows:

(1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional . . . and meets the following criteria:

\* \* \*

(b) . . . [D]*uring the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following*:

(*i*) The *active clinical practice of the same health profession* in which the party against whom or on whose behalf the testimony is offered is licensed . . . .

(*ii*) The *instruction of students in an accredited health professional school or accredited residency or clinical re-*

---

[1] MCL 600.5852.

*search program* in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed . . . .[2]

The term "majority" in subsection (1)(b) requires a proposed medical expert to spend greater than 50 percent of his or her professional time practicing or teaching in the same health profession as the party against whom or on whose behalf the testimony is offered during the year before the alleged malpractice.[3]

Nurse Boggs testified in her deposition that from about 2000 to December 2003, she was employed as the director of education at Northlake Medical Center. In this position, she "oversaw education for the whole facility," including orienting new nurses to their units. More specifically, she testified as follows:

*Q. [Counsel]*: Were you taking an active role in patient care as the director of education?

*A. [Nurse Boggs]*: Only as far as I was working with the new nurses on their nursing unit.

*Q.* And what percentage of your job as director of education was working with new nurses to orientate them to their new floors?

*A.* Probably 25 percent.

\* \* \*

*Q.* And that was 25 percent of your time. What was the other 75 percent of your time spent doing?

*A.* Fifty percent teaching and 25 percent meetings and setting up classes.

In sum, according to Nurse Boggs's deposition testimony, she spent 25 percent of her time orienting new

---

[2] Emphasis added.

[3] *Kiefer v Markley*, 283 Mich App 555, 559; 769 NW2d 271 (2009).

nurses to their assigned units, 25 percent of her time in meetings and setting up classes, and 50 percent of her time teaching. On the basis of this testimony alone, I would agree with the majority that Nurse Boggs would meet the MCL 600.2169(1)(b)(*ii*) requirement by spending greater than 50 percent of her professional time in the instruction of nursing students: she clearly testified that she spent 50 percent of her time teaching and some additional portion of her time setting up classes, which, although more akin to an administrative task, does arguably fall within the scope of "instruction of students." However, this deposition does not end the inquiry into the calculation of Nurse Boggs's time.

In her later-filed supporting affidavit, Nurse Boggs clarified:

> [I]n addition to the 25% of my professional time I spent in the active clinical practice of nursing, most of the rest, I believe 65%, of my total professional time was very much focused on the education and training of nurses in that accredited facility and in its accredited clinical research programs.

She explained that the remaining 10 percent of her time was spent performing "clerical tasks facilitating my instructional role[.]"

Thus, while continuing to claim that 25 percent of her time was spent in the active clinical practice of nursing by virtue of her orientation of new nurses, Nurse Boggs significantly amended her explanation of the remaining 75 percent of her time. More specifically, according to Nurse Boggs, of the 65 percent that she claimed was spent "focused on the education and training of nurses," she actually spent that time as follows:

- 25 percent "teaching new issues and . . . procedures and brushing up skills and knowledge bases on all policies, practices and procedures to our nurses in an accredited classroom setting";

- 10 percent "chairing the nursing policy and procedure committee, as a member of the education committee";

- 10 percent "teaching nurses[,] . . . emergency medical technicians[,] and others . . . basic life support classes, providing candidate advice for advanced life support certification . . . and in continuing my own training"; and

- 20 percent "as the co-chair of the policy and procedure committee of the hospital, as a member of the patient care and education committee and assisting in the preparation of the Joint Commission surveys which were the basis of our continuing accreditation."

On the basis of this additional information, I conclude that the trial court did not abuse its discretion by finding that Nurse Boggs was not qualified to testify as an expert under MCL 600.2169(1)(b).

With respect to active clinical practice, as stated, Nurse Boggs testified in her deposition and averred in her affidavit that 25 percent of her time was spent in active nursing practice by virtue of her orientation of new nurses. However, in my interpretation, I believe that Nurse Boggs's time spent orienting new nurses to their units did not qualify as "active clinical practice" because it did not involve the active care of patients.[4] That is, I believe that the key component of the phrase "active clinical practice" is the word "active," which is

---

[4] See, e.g., *Hatchett v Surapaneni*, unpublished opinion per curiam of the Court of Appeals, issued November 6, 2003 (Docket No. 238714) (stating that the proposed expert witness devoted a majority of his time to active clinical practice because "about 50 percent of his professional time was spent performing research – but it was clinical research, i.e., had a significant clinical component, *including patient care and treatment*," and "about 30 percent of his time to *seeing his own clients*") (emphasis added).

defined, in pertinent part, as "3. marked by or disposed to direct involvement or practical action[;] . . . 6. characterized by current activity, participation, or use[.]"[5] Thus, in my opinion, working in a clinical setting merely overseeing employees who actually treat the patients is too removed from the type of experience contemplated by the statutory requirement.

Thus, I turn to consideration of the remaining 75 percent of Nurse Boggs's time. Again, Nurse Boggs clarified in her affidavit that, of that 75 percent, she actually spent 10 percent as chair of the nursing policy and procedure committee and 20 percent as the cochair of the policy and procedure committee of the hospital. Thus, 30 percent of that 75 percent was clearly spent on activities other than active clinical practice or teaching.

That leaves only 45 percent of Nurse Boggs's time remaining. And although this time was arguably spent on the instruction of students in some capacity (10 percent on clerical tasks facilitating her instructional role; 25 percent on teaching and "brushing up" nurses on policies, practices, and procedures; and 10 percent teaching basic life support classes), 45 percent is below the requisite "majority" of time—that is, more than 50 percent—necessary to satisfy the statute. Accordingly, I would conclude that the trial court did not abuse its discretion by striking Nurse Boggs as an expert because she was not qualified to offer expert testimony in this nursing malpractice case.

## II. PROPER REMEDY

### A. STANDARD OF REVIEW

Plaintiff argues that even if the trial court properly struck Nurse Boggs's testimony, it erred by dismissing

---

[5] *Random House Webster's College Dictionary* (2d ed, 1997), pp 13-14.

the lawsuit because other remedies—such as amendment of the affidavit of merit and substitution of Jean Hurynowicz, R.N., for Nurse Boggs, or dismissal without prejudice—were available and appropriate remedies. This Court reviews for an abuse of discretion a trial court's decision to deny amendment of witness lists.[6] This Court also reviews for an abuse of discretion a trial court's decision to dismiss an action.[7]

### B. UNDERLYING FACTS

After receiving notice of the hospital's September 2010 motion to strike Nurse Boggs as an expert and dismiss plaintiff's complaint with prejudice, plaintiff retained Nurse Hurynowicz to review the pertinent documentation to determine whether the hospital's nursing staff had committed malpractice in its treatment of Wright. Nurse Hurynowicz concluded that nursing malpractice had been committed, and in October 2010, plaintiff served a supplemental witness list on the hospital.

The hospital moved to dismiss plaintiff's supplemental witness list on the ground that it was untimely filed, two years after the initial complaint had been filed and only six weeks before trial. Plaintiff responded that seeking to replace Nurse Boggs with Nurse Hurynowicz was a prudent and necessary step to avoid adjournment of the trial in the event that the trial court concluded that Nurse Boggs did not qualify as an expert. And plaintiff argued that even if the trial court refused to allow substitution of Nurse Boggs with Nurse Hurynowicz, the proper remedy would be dismissal without prejudice.

---

[6] *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1992).

[7] *Vicencio v Ramirez*, 211 Mich App 501, 506; 536 NW2d 280 (1995).

The hospital also filed a brief, arguing that dismissal with prejudice was the proper remedy. According to the hospital, plaintiff filed her complaint outside the applicable period of limitations, and the deficient affidavit of merit did not toll the wrongful death saving period, which expired on November 14, 2008; thus, plaintiff's case would be timebarred, and dismissal with prejudice was the only available remedy.

After hearing further oral arguments on the matter, the trial court first stated that its understanding of the pertinent caselaw led to a conclusion that whether or not a plaintiff's attorney had a reasonable belief regarding its expert's qualifications, the remedy was dismissal without prejudice. However, the trial court questioned whether the close temporal proximity to the trial nevertheless warranted dismissal with prejudice. The trial court also indicated that it was persuaded by caselaw that stated that a defective affidavit of merit does not toll the wrongful death saving period and results in dismissal with prejudice.

### C. AMENDMENT AND SUBSTITUTION OF NURSE HURYNOWICZ FOR NURSE BOGGS

Plaintiff argues that the trial court erred by not allowing her to substitute Nurse Hurynowicz as her expert witness. I disagree.

I first note that plaintiff's reliance on *Dean v Tucker*[8] is misplaced because that case involved discovery sanctions rather than the failure to produce a witness qualified to testify under MCL 600.2169. Thus, the *Dean* factors are inapplicable.

With that said, I find it significant that the trial court's original scheduling order required that plaintiff

_____

[8] *Dean v Tucker*, 182 Mich App 27, 31-33; 451 NW2d 571 (1990).

disclose all expert witnesses by August 18, 2009. That date was later extended until January 17, 2010. And a later scheduling order required that plaintiff depose all expert witnesses by August 3, 2010. Here, the trial court had discretion to decline to entertain requests beyond the time frames agreed to and set forth in a scheduling order.[9] "Were the rules not so construed, scheduling orders would quickly become meaningless."[10] This was not an extreme case warranting a finding of an abuse of discretion.[11] Indeed, I conclude that the trial court's refusal to allow the substitution of an entirely new expert witness only 50 days before trial was well within the range of principled outcomes, especially in light of its ruling that dismissal with prejudice was the proper remedy for the defective affidavit of merit.

### D. DISMISSAL WITH PREJUDICE

Plaintiff argues that dismissal of the case should have been ordered without prejudice so that plaintiff could refile her cause of action within the remaining time left in the period of limitations. The hospital argues that it was proper for the trial court to dismiss plaintiff's lawsuit with prejudice because the trial court struck plaintiff's only nursing expert. Therefore, the hospital argues, plaintiff was unable to establish her prima facie case.

Plaintiff is correct that, pursuant to *Kirkaldy v Rim*,[12] the filing of a complaint and accompanying affidavit of merit tolls the applicable period of limita-

---

[9] *People v Grove*, 455 Mich 439, 464-465; 566 NW2d 547 (1997).

[10] *Id.* at 469.

[11] *Id.*

[12] *Kirkaldy v Rim*, 478 Mich 581, 586; 734 NW2d 201 (2007).

tions until the validity of the affidavit is successfully challenged. Thus, where an affidavit of merit is found defective, dismissal without prejudice is the proper remedy, allowing the plaintiff to refile the cause of action within whatever time still remains in the period of limitations.[13]

However, as the trial court correctly recognized, pursuant to *Ligons v Crittenton Hosp*,[14] the filing of a complaint and accompanying affidavit of merit does not toll the wrongful death saving period.[15] Thus, where the wrongful death saving period has expired, the proper remedy for a personal representative's failure to submit a conforming affidavit of merit is dismissal with prejudice.[16]

Here, it is undisputed that the alleged malpractice occurred on November 14, 2003, and therefore, the applicable two-year period of limitation[17] expired on November 14, 2005. But plaintiff did not file her complaint and affidavit of merit until November 5, 2008, almost three years after the two-year period of limitations expired. Thus, contrary to plaintiff's contentions, *Kirkaldy* is inapplicable because there is no time remaining in the limitations period in which to refile the case.

The expiration of that period of limitations did not time bar plaintiff's action, however, because under the wrongful death saving provision she had, at the latest, until November 14, 2008, to file her claim.[18] Plaintiff filed her

---

[13] *Id.*

[14] *Ligons v Crittenton Hosp*, 285 Mich App 337, 354; 776 NW2d 361 (2009).

[15] MCL 600.5852.

[16] *Ligons*, 285 Mich App at 354.

[17] MCL 600.5805(6).

[18] Under the wrongful death saving provision, the personal representative of the estate of a deceased person may file an action at any time

complaint and affidavit of merit on November 5, 2008. But because under *Ligons* that filing had no tolling effect on the wrongful death saving period, there is no remaining time available under the wrongful death saving period and the successful challenge to the affidavit of merit requires dismissal with prejudice.

Accordingly, I conclude that the trial court did not abuse its discretion by ordering dismissal with prejudice.

I would affirm.

---

within two years after letters of authority are issued, but no later than three years after the period of limitations has run. MCL 600.5852.