# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF DONNY PEYTON, by KATHLEEN
PEYTON, Personal Representative,

       Plaintiff-Appellant,

v

NOVI INTERNAL MEDICINE AND
PEDIATRICS, PLLC, RICHARD J. TARAS,
D.O., doing business as CONTEMPORARY
IMAGING ASSOCIATES, PC, LOUIS W.
SCHWARTZ, D.O., PC, LOUIS SCHWARTZ,
D.O., and KRISTIN KAMIENECKI, D.O.,

       Defendants-Appellees,

and

BOTSFORD MEDICAL IMAGING, PC,

       Defendant.[1]

UNPUBLISHED
April 13, 2017

No. 329890
Oakland Circuit Court
LC No. 2013-136961-NH

Before: FORT HOOD, P.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

       Plaintiff, Kathleen Peyton, as personal representative of the estate of Donny Peyton, appeals as of right from the trial court's order granting summary disposition in favor of defendants, Novi Internal Medicine and Pediatrics, PLLC, Richard J. Taras, D.O., doing business as Contemporary Imaging Associates, PC, Louis W. Schwartz, D.O., PC, Louis Schwartz, D.O., and Kristin Kamienecki, D.O. (hereinafter "defendants" when referred to collectively), in this action for wrongful death premised on medical malpractice. On appeal, plaintiff also challenges the trial court's earlier order striking the testimony of plaintiff's expert witness, Dr. Barry Singer, regarding proximate causation. We affirm.

---

[1] Botsford Medical Imaging, PC, was dismissed, without prejudice, by a stipulated order entered by the trial court on November 22, 2013.

This action arises from the death of Donny Peyton (hereinafter "the decedent"). The decedent went for a medical checkup at Novi Internal Medicine and Pediatrics, PLLC, on September 2, 2010. He presented with a history of cigarette smoking and recent complaints of back and joint pain. Dr. Schwartz diagnosed the decedent with chronic obstructive pulmonary disease (COPD) and osteoarthritis. Dr. Schwartz concurrently ordered x-rays of the decedent's chest. Following his own review, Dr. Schwartz forwarded the x-rays to Dr. Kamienecki, a radiologist, for evaluation. Dr. Kamienecki interpreted the decedent's chest x-ray to show "mild chronic obstructive pulmonary disease without evidence of pneumonia or pulmonary vascular congestion." Plaintiff alleged that Dr. Kamienecki "failed to identify an abnormal density that was present in the right lung that was suspicious for lung cancer." When the decedent presented to Dr. Schwartz on September 7, 2010, for a follow-up visit, no further diagnostic studies, tests, referrals or appointments were recommended.

Subsequently, on December 12, 2011, the decedent went to Henry Ford Macomb Hospital with complaints of nausea and abdominal pain. A CT scan of the decedent's chest indicated a large mass in his lower right lung lobe, which was consistent with cancer, in addition to the involvement of the lymph nodes and adrenal glands. Following his hospitalization, the decedent was diagnosed with "metastatic non-small cell lung cancer." It was determined that the decedent was not a viable candidate for surgical resection due to the advanced stage of the disease. Despite chemotherapy treatment, the decedent's prognosis was deemed to be poor. The decedent died of lung cancer on June 22, 2012.

Plaintiff contends the trial court erred in denying the admissibility of the opinion testimony of her expert, Dr. Singer.[2] In an extension of this argument, plaintiff claims that had the trial court not made the error of precluding Dr. Singer's testimony, summary disposition would not have been granted.

The trial court granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(10). As the Michigan Supreme Court stated in *Bernardoni v City of Saginaw*, 499 Mich 470, 472; 886 NW2d 109 (2016), a trial court's decision on a motion for summary disposition is reviewed de novo "to determine if the moving party is entitled to judgment as a matter of law." (Citation omitted.) Specifically, "[a] motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. The Court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Bernardoni*, 499 Mich at 472-473 (citation omitted).

To the extent that this appeal requires us to review the trial court's ruling on the admission of evidence, such a decision is reviewed for an abuse of discretion. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id.* (citation omitted).

---

[2] We note that the trial court undertook a thorough evidentiary hearing that spanned two days in determining whether Dr. Singer's testimony met the threshold requirements of MRE 702 and MCL 600.2955.

"[T]he proponent of evidence bears the burden of establishing relevance and admissibility[.]" *Id.* (citation omitted). When determining whether the trial court properly determined if an expert is qualified to testify, we review de novo "whether the trial court correctly selected, interpreted, and applied the law." *Gay v Select Specialty Hosp*, 295 Mich App 284, 291; 813 NW2d 354 (2012) (citation omitted). Where the trial court's decision to admit or exclude evidence rests on an incorrect interpretation or application of the law, this "necessarily" results in an abuse of discretion. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016).

Although plaintiff disputes the propriety of the grant of summary disposition in favor of defendants, her challenge to that order derives from the threshold issue regarding the admissibility of Dr. Singer's testimony, and her contention that the trial court erred in precluding this evidence. With reference to testimony proffered by experts, MRE 702 states:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) *the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case*. [Emphasis added.]

MRE 702 was discussed in *Edry,*[3] where the Michigan Supreme Court explained:

> This Court has stated that MRE 702 incorporates the standards of reliability that the United States Supreme Court described to interpret the equivalent federal rule of evidence in *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 781; 685 NW2d 391 (2004). Under *Daubert*, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 US at 589. This Court has implied that, while not dispositive, a lack of supporting literature is an important factor in determining the admissibility of expert witness testimony. See *Craig [v Oakwood Hosp]*, 471 Mich [67,] 83-84; 684 NW2d 296 (2004) (stating that the expert's singular reliance on his own hypothetical depiction of an event may have been too speculative and, therefore, inadmissible under MRE 702). See, also, *Daubert*, 509 US at 593 (stating that whether there is peer-reviewed and published literature on a theory is a "pertinent consideration" because "submission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected"). [*Edry*, 486 Mich at 639-640.]

---

[3] Dr. Singer was also the plaintiff's oncology expert in *Edry*. *Edry*, 486 Mich at 637. Dr. Joel Appel served as the defendants' oncology expert in *Edry*. *Id.* at 638.

The pivotal issue on appeal is whether the trial court correctly found that Dr. Singer's method of extrapolating pathologic staged cancer survival rates to the decedent, in the admitted absence of pathologic information necessary for this form of cancer staging, did not meet the requirements of MRE 702 and MCL 600.2955. During his testimony at the evidentiary hearing, Dr. Singer acknowledged pathologic staging could not be performed where the decedent's tumor was not surgically removed. He further acknowledged that where only one x-ray was performed in September 2010, even the information necessary or relevant for the completion of clinical staging of the decedent's cancer was not available. Despite the absence of the requisite data to perform pathologic staging, Dr. Singer opined that defendant's cancer was at pathologic stage I or II in September of 2010. Dr. Singer based this opinion on the aggressive growth of the tumor leading to the decedent's death in June 2012. He then applied the survival rates associated with pathologic staging to opine that the decedent would have benefited from a greater than 50% survival rate had he been properly diagnosed and treated in September of 2010.

As in *Edry*, Dr. Singer's testimony "failed to meet the cornerstone requirements of MRE 702." *Edry*, 486 Mich at 640. Put simply, the trial court correctly concluded that plaintiff was unable to demonstrate that Dr. Singer's opinion was premised on reliable scientific principles or methods, and that he reliably applied those principles to the facts of this case. MRE 702. Notably, plaintiff did not proffer supporting evidence or documentation demonstrating that the method employed by Dr. Singer was accepted in the scientific or medical community for cancer staging.[4] As noted by the trial court, Dr. Singer appears to have "developed his own methodology" for purposes of litigation. For example, Dr. Singer expressly acknowledged that to perform pathologic staging it is necessary to have information obtained from surgically removing the tumor. While the graph[5] relied on by Dr. Singer in providing survival rates was purportedly derived from a professional, peer-reviewed journal, the determinative issue here is not the reliability of the survival rates that Dr. Singer relied on, but the lack of support for Dr. Singer's methodology of applying pathologic survival rates where the decedent's tumor was not surgically removed.[6] Put another way, the reliability of the cited survival rates is not at issue; rather, the methodology used by Dr. Singer to determine the decedent's stage of cancer, under the specific circumstances of this case, is what is subject to question. Accordingly, the trial court correctly concluded that Dr. Singer's testimony was not admissible, where it was not "the

---

[4] Defendants' expert, Dr. Joel Appel, specifically denied the existence of any peer reviewed study or literature to support Dr. Singer's methodology.

[5] Plaintiff produced a copy of a graph titled "Overall survival by TNM grouping, non-small cell lung cancer[,]" in support of Dr. Singer's opinion testimony in this case. This graph evidenced "[o]verall survival" from lung cancer, by both clinical stage and pathologic stage.

[6] Plaintiff's assertions that the trial court improperly excluded Dr. Singer's testimony where disputes concerning the validity of the studies that both he and Dr. Appel relied on should have been left to the jury is also without merit, given that the reliability of these studies was not the key issue for the trial court to decide. Rather, it was Dr. Singer's methodology that was at issue.

product of reliable principles and methods," and where Dr. Singer did not reliably apply his cited principles and methods to the facts of this case.  MRE 702.[7]

Moreover, where plaintiff blames defendants' alleged negligence for the lack of pathologic staging in this case, plaintiff's argument still does not address the core principle at issue, whether using pathologic staging to project a survival rate for a decedent is scientifically valid and reliable where the decedent was not staged in that manner.  Similarly, where plaintiff argues that the trial court improperly relied on the testimony of Dr. Appel in excluding Dr. Singer's testimony as both experts should have been presented to the jury to determine their credibility pertinent to issues of causation, we note that the trial court primarily relied on Dr. Appel's testimony to decide whether Dr. Singer's methodology met the requirements of MRE 702 and MCL 600.2955(1).    Additionally, plaintiff attempts to validate Dr. Singer's methodology on the basis that Dr. Singer relied on what was "known[ ]" under the facts of this case, citing the United States Supreme Court's decision in *Daubert*, 509 US at 590.  In the portion of *Daubert* plaintiff points to, the United States Supreme Court discussed the requirement of FRE 702, the federal counterpart to MRE 702, that an expert may testify regarding their scientific knowledge if such testimony will assist the trier of fact.  *Id*.  In *Daubert*, the United States Supreme Court recognized that science is not prone to certainty.  *Id*.

> But, in order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method.  Proposed testimony must be supported by appropriate validation – *i.e.* "good grounds" based on what is known.  [*Id*.]

A close review of *Daubert* illustrates that the United States Supreme Court was confirming that science is not based on certainties, and that an expert opinion may still be offered pursuant to FRE 702 as long as the testimony is founded on appropriate scientific validation.  In contrast, where the record in this case confirms that Dr. Singer's applied methodology was not supported by appropriate validation, plaintiff's citation to *Daubert* is simply not supportive of her legal position.

While it is unnecessary for this Court to consider the admissibility of Dr. Singer's testimony under MCL 600.2955, we will briefly address this issue because MCL 600.2955 was the cited basis for the trial court's ruling.  See *Edry*, 486 Mich at 642 n 7 ("We need not address MCL 600.2955 in this case because an expert witness who is qualified under one statute may be disqualified on other grounds.  Here, Dr. Singer's opinion is inadmissible under MRE 702; therefore, it is unnecessary to consider the admissibility of his opinion under MCL 600.2955."). (Citation omitted.)

Expert testimony in medical malpractice actions is also governed by MCL 600.2955, which provides, in relevant part:

---

[7] While the trial court cited MCL 600.2955(1) as the basis for its opinion, our review of its written opinion confirms that the trial court impliedly found that Dr. Singer was not reliably applying his methodology under the facts of this case.  MRE 702.

(1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

(2) A novel methodology or form of scientific evidence may be admitted into evidence only if its proponent establishes that it has achieved general scientific acceptance among impartial and disinterested experts in the field.

As the Michigan Supreme Court recently stated, "it bears repeating that it is within a trial court's discretion how to determine reliability[,]" and "not all the factors in MCL 600.2955 [will be] relevant in every case." *Elher*, 499 Mich at 25, 26 (footnote and citation omitted).

The trial court correctly determined that Dr. Singer's opinion testimony did not meet the criteria established in MCL 600.2955(1). There was no evidence proffered by plaintiff that Dr. Singer's methodology of projecting the survival rates of a person diagnosed with lung cancer on the basis of pathologic staging, when such staging did not in fact take place, was recognized, replicated or used within the medical community for cancer staging.[8] No literature or peer-

---

[8] We acknowledge that plaintiff produced an article entitled, *The IASLC Lung Cancer Staging Project: Proposals for Revision of the M Descriptors in the Forthcoming (Seventh) Edition of the*

reviewed studies were submitted to support Dr. Singer's methodology, and defendants' expert specifically averred the lack of recognition within the medical community. Rather, Dr. Singer's methodology was contrary to, or at least not consistent with, the recognized methods of cancer staging, rendering his conclusion regarding the decedent's survival rate to be unreliable. Even if construed to be a "novel" methodology, plaintiff failed to demonstrate any "general scientific acceptance" of Dr. Singer's method for determining the staging of the decedent's cancer using pathologic staging, where such pathologic staging did not occur in this case, rendering it inadmissible. MCL 600.2955(2). While it is not required that proffered testimony satisfy all of the provisions of MCL 600.2955(1) to be admissible, in this instance, Dr. Singer's proffered testimony was deficient in failing to meet all of the statutory criteria. See *Chapin v A & L Parts, Inc*, 274 Mich App 122, 137; 732 NW2d 578 (2007) (opinion by DAVIS, J.) ("[A]lthough MCL 600.2955(1) explicitly requires the trial court to *consider* all seven of the factors it enumerates, the statute does not require that each and every one of those seven factors must favor the proffered testimony.").

Because the trial court properly concluded that Dr. Singer's opinion testimony was inadmissible, it did not err in granting summary disposition in favor of defendants. To establish the elements to proceed on a claim of medical malpractice, a plaintiff carries the burden of proving:

> (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) *that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care*. [*Kalaj v Khan*, 295 Mich App 420, 429; 820 NW2d 223 (2012), citing *Craig*, 471 Mich at 86 (emphasis added).]

The "[f]ailure to prove any one of these elements is fatal" to the claim. *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995). "Expert testimony is required to establish the standard of care and a breach of that standard, as well as causation." *Kalaj*, 295 Mich App at 429 (citations omitted). The exclusion of Dr. Singer's expert opinion testimony precluded plaintiff from being able to establish the requisite element of proximate causation to proceed with her medical malpractice claim. Therefore, summary disposition was properly granted.

---

*TNM Classification of Lung Cancer*, published in the Journal of Thoracic Oncology in August 2007. However, a review of this article does not yield any indication that Dr. Singer's methodology of using pathologic staging to project a decedent's survival rate from lung cancer where pathologic staging did not in fact occur has "been subjected to scientific testing and replication[,]" and "peer review publication." MCL 600.2955(1)(a), (b).

Affirmed. Defendants, as prevailing parties, may tax costs pursuant to MCR 7.219.


/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra