*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LYNDA DANHOFF and DANIEL DANHOFF,

Plaintiffs-Appellants,

v

DANIEL K. FAHIM, M.D. and MICHIGAN HEAD & SPINE INSTITUTE,

Defendants-Appellees,

and

DANIEL K. FAHIM, M.D., PC, KENNETH P D'ANDREA, D.O., and WILIAM BEAUMONT HOSPITAL, doing business as BEAUMONT HOSPITAL-ROYAL OAK,

Defendants.

UNPUBLISHED
May 6, 2021

No. 352648
OAKLAND CIRCUIT COURT
LC No. 2018-166129-NH

Before: TUKEL, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

In this medical malpractice action, plaintiffs Lynda Danhoff and Daniel Danhoff appeal as of right the trial court's order granting summary disposition to defendants Dr. Daniel K. Fahim, M.D. and Michigan Head & Spine Institute.[1] Plaintiffs argue that the trial court erred by concluding that their standard of care expert, Dr. Christopher Koebbe, was not qualified to testify as an expert witness because he failed to satisfy the standards for determining the reliability of

---

[1] Defendants Daniel K. Fahim, M.D., PC; Dr. Kenneth P. D'Andrea, D.O.; and William Beaumont Hospital, also known as Beaumont Hospital-Royal Oak, were all dismissed from this case. All references to "defendants" will refer to Dr. Daniel K. Fahim, M.D. and Michigan Head & Spine Institute. As Daniel Danhoff's alleged cause of action is derivative of his wife Lynda's claims, all of our references to "plaintiff" refer to Lynda Danhoff.

-1-

expert testimony first established by *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993); the basis for the trial court's ruling was that Dr. Koebbe failed to support his opinion with medical journals or other authority to establish his opinion's reliability. We find that the trial court acted within its discretion in ruling Dr. Koebbe's testimony inadmissible, and consequently we affirm the orders of the trial court.

## I.  UNDERLYING FACTS

This case arises from a December 7, 2015 surgery on plaintiff's back.  Dr. Fahim, a board-certified neurosurgeon, was the lead surgeon.  Plaintiff's procedure was to be performed in two separate surgeries; the first surgery, which occurred on December 7, 2015, is the surgery that involved the alleged malpractice in this case.  During this surgery, Dr. Fahim operated on plaintiff's L3 and L4 vertebrae.

The December 7, 2015 surgery was a minimally invasive procedure referred to as an "extreme lateral intrabody fusion" (XLIF).  During an XLIF procedure, surgeons make an incision on the patient's side and reach the patient's spine by carefully moving fat and muscle out of the way.  As explained by Dr. Fahim, the entire procedure should take place in the "retroperitoneal space," which is "an area of fat that is behind the peritoneum."  "The peritoneum is what contains all the intraabdominal structures; the intraabdominal organs," including the sigmoid colon, which is the only organ at issue in this case.  Instruments called retractors are used to keep the peritoneum space away from the location of the surgery.  When done correctly, the sigmoid colon should be about "12 to 15 centimeters away" from the location of the surgery.  After reaching the spine, a knife is then used on the relevant disk for the operation on the spine itself.  According to Dr. Fahim, the December 7, 2015 surgery "went without complications as far as anyone could tell at the time of the procedure."

Plaintiff experienced pain the day after the December 7 surgery and had a fever that rose to a peak of 102.4 degrees Fahrenheit.  Dr. Fahim, however, opined that these were normal symptoms following an XLIF surgery and were not cause for concern.  As a result, Dr. Fahim proceeded with the second surgery on December 9, 2015, which took place without issue.  The following day, December 10, 2015, the location of the incision from the December 7 surgery appeared red.  Plaintiff's temperature and blood pressure rose to the extent that she was taken to the intensive care unit (ICU) and a computed tomography (CT) scan was taken; the CT scan revealed "free air and free material outside the colon."

Another surgery, the third, was then performed to rectify the issue.  Dr. Anthony Iacco performed this surgery and observed that stool was leaking from plaintiff's sigmoid colon due to a hole in it.  Dr. Iacco suctioned up the stool and performed an ostomy to divert stool from plaintiff's sigmoid colon while it healed.  During the surgery, Dr. Iacco observed a perforation of plaintiff's sigmoid colon near the incision site from the December 7 surgery.  In all, plaintiff required four surgeries in six days to correct the sigmoid colon issue; she was discharged from the hospital on January 6, 2016.

Plaintiffs filed a complaint alleging, in relevant part, that Dr. Fahim committed medical malpractice by puncturing plaintiff's sigmoid colon during the December 7 surgery.  According to plaintiffs, Dr. Fahim's actions constituted medical malpractice and Michigan Head & Spine was

vicariously liable for its employee, Dr. Fahim. Plaintiffs additionally alleged that Daniel Danhoff suffered the loss of plaintiff's love and affection as a result of Dr. Fahim's malpractice.

Defendants denied the allegations and after discovery moved for summary disposition, arguing that plaintiffs' standard of care expert, Dr. Koebbe, was not qualified because his standard of care opinion was based solely on his experience and background. Plaintiffs responded, arguing that Dr. Koebbe's expert testimony was reliable, but they failed to provide any scholarly authority supporting Dr. Koebbe's testimony. In reply, defendants submitted affidavits from two doctors stating that Dr. Fahim did not breach the standard of care. The trial court granted summary disposition to defendants, but informed plaintiffs it would address the issue on reconsideration if plaintiffs could provide additional authority supporting Dr. Koebbe's standard of care testimony. Plaintiffs moved for reconsideration and submitted an affidavit by Dr. Koebbe and scholarly articles in support, but the trial court nevertheless denied plaintiffs' motion. This appeal followed.

## II. STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and is reviewed de novo. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994); see also *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010) (a court must draw all reasonable inferences in favor of the nonmoving party).

The moving party has the initial burden to support its claim with documentary evidence, but once the moving party has met this burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists. *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005). Additionally, if the moving party demonstrates that the nonmovant lacks evidence to support an essential element of one of his or her claims, the burden shifts to the nonmovant to present sufficient evidence to dispute that fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016).

"The trial court's decision regarding whether an expert witness is qualified is reviewed for an abuse of discretion." *Turbin v Graesser*, 214 Mich App 215, 217-218; 542 NW2d 607 (1995). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range

of principled outcomes." *Hayford v Hayford*, 279 Mich App 324, 325-326; 760 NW2d 503 (2008). A decision on a close evidentiary question ordinarily cannot constitute an abuse of discretion, *Barr v Farm Bureau Gen Ins Co*, 292 Mich App 456, 458; 806 NW2d 531 (2011), but an erroneous application of the law is by definition an abuse of discretion, *Gay v Select Specialty Hosp*, 295 Mich App 284, 292; 813 NW2d 354 (2012).

Finally, "[t]his Court reviews for an abuse of discretion a trial court's decision on a motion for reconsideration." *In re Estate of Moukalled*, 269 Mich App 708, 713; 714 NW2d 400 (2006). MCR 2.119(F)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

## III. ANALYSIS

"A plaintiff in a medical malpractice action must establish (1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016) (citation and quotation marks omitted). In general, "expert testimony is required in a malpractice case in order to establish the applicable standard of care and to demonstrate that the professional breached that standard." *Id.* (citation and quotation marks omitted). But an expert witness is not required "when the professional's breach of the standard of care is so obvious that it is within the common knowledge and experience of an ordinary layperson." *Id.* at 21-22 (citation omitted). Finally, "[t]he proponent of the evidence has the burden of establishing its relevance and admissibility." *Id.* at 22 (citation omitted). "The proponent of expert testimony in a medical malpractice case must satisfy the court that the expert is qualified under MRE 702, MCL 600.2955 and MCL 600.2169." *Elher*, 499 Mich at 22 (citation and quotation marks omitted).

MRE 702 incorporates the *Daubert* standard. See *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 781; 685 NW2d 391 (2004) (noting that "MRE 702 has . . . been amended explicitly to incorporate *Daubert's* standards of reliability."). It provides

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial court's obligation under *Daubert* generally is referred to as "gatekeeping" or the "gatekeeper role." See *Gilbert*, 470 Mich at 782. MRE 702, as applied to the trial court's discharge of its gatekeeping role, "requires the circuit court to ensure that *each aspect* of an expert witness's

-4-

testimony, including the underlying data and methodology, is reliable." *Elher*, 499 Mich at 22 (citation omitted; emphasis added). Reliability for purposes of *Daubert* is a term of art. "The objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co, Ltd v Carmichael*, 526 US 137, 152; 119 S Ct 1167; 143 L Ed 2d 238 (1999). "The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 US at 594-595. Furthermore,

> MRE 702 mandates a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data. Thus, it is insufficient for the proponent of expert opinion merely to show that the opinion rests on data viewed as legitimate in the context of a particular area of expertise (such as medicine). The proponent must also show that any opinion based on those data expresses conclusions reached through reliable principles and methodology. [*Gilbert*, 470 Mich at 782.]

Thus, we are called on to review whether the trial court abused its discretion in finding that Dr. Koebbe's testimony regarding the standard of care failed to establish reliability as *Daubert* defined that term.

*Daubert* set forth a non-exhaustive list of factors for a trial court to consider in making the reliability determination. The factors include: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error; and (4) the general acceptance of the scientific technique. *Daubert*, 509 US at 593-594.

In considering the medical opinion testimony of an expert in a malpractice case, our Supreme Court has held that "[a] lack of supporting literature, while not dispositive, is an important factor in determining the admissibility of expert witness testimony." *Elher*, 499 Mich at 23 (citation omitted). Furthermore, "[u]nder MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." *Id.* (citation and quotation marks omitted). Consequently, standard of care experts, such as Dr. Koebbe, generally must base their standard of care expert testimony on something more than their experience and background. See *id*.

The standard of care is a threshold issue that an expert witness must be qualified to testify about before a trial court even considers the expert witness's substantive testimony. See MCL 600.2912a(1). Accordingly, the trial court must first exercise the gatekeeping function regarding the applicable standard of care before determining that the witness is qualified to testify as an expert as to the applicable standard of care. MCL 600.2912)a(2); see also *Kumho Tire Co*, 526 US at 149; citing *Daubert*, 509 US at 590 and 592 (holding that Rule 702 "establishes a standard of evidentiary reliability" which "requires a valid . . . connection to the pertinent inquiry as a

precondition to admissibility"); *Gilbert*, 470 Mich at 780 n 46 (MRE 702 provides that the trial the court's determination of the reliability of expert testimony "is a precondition to admissibility").

Plaintiffs have appealed two separate orders in this case: (1) the trial court's order granting summary disposition to defendants and (2) the trial court's order denying plaintiffs' motion for reconsideration. Because Dr. Koebbe's standard of care testimony was supported by medical literature at the motion for reconsideration stage only, we will address each order separately. See *Pena v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003) ("[W]e only consider what was properly presented to the trial court before its decision on the motion.").

## A. MOTION FOR SUMMARY DISPOSITION

In granting summary disposition, the trial court ruled:

> While the Court recognizes that, practically, there may have been a breach of the standard of care, the law requires that expert testimony have a basis in recognized scientific or technical principles. The Court finds that Dr. Koebbe's testimony regarding the standard of care is not sufficiently reliable for admission under MRE 702. Dr. Koebbe is Plaintiffs' sole standard of care witness. Without establishing the proper standard of care, Plaintiffs cannot maintain a claim for medical malpractice. *Weymers v Khera,* 454 Mich 639, 647 (1997); see also *Locke v Pachtman,* 446 Mich 216, 222 (1994). Therefore, based on the evidence before it, the Court has no choice but to strike Dr. Koebbe's testimony and grant Defendant's Motion.

At the summary disposition phase of the trial court proceedings Dr. Koebbe's standard of care testimony was not supported by any literature. As explained earlier, standard of care opinion testimony must be reliable and "[a] lack of supporting literature, while not dispositive, is an important factor in determining the admissibility of expert witness testimony." *Elher*, 499 Mich at 23 (citation omitted). Furthermore, "[u]nder MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." *Id*. (citation and quotation marks omitted). Indeed, both the US Supreme Court and the Michigan Supreme Court have emphasized that an expert witness's mere say so, or ipse dixit, is insufficient to establish reliability of the proposed testimony. See *Gen Elec Co v Joiner*, 522 US 136, 146; 118 S Ct 512; 139 L Ed 2d 508 (1997) (noting that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Kumho Tire*, 526 US at 137 (same, citing *Joyner*); *Gilbert*, 470 Mich at 783 (same, citing *Joyner*).

Plaintiffs argue that no case holds that a witness must support his or her opinion with scholarly articles. That is of course correct, because *Daubert*'s list of permissible factors to consider at the gatekeeping stage is non-exhaustive. But the fact that scholarly support for a position is not required is not dispositive; there must be some evidence, beyond the witness's mere say so, that establishes that the opinion is based on reliable principles. However, at the summary disposition stage in this case, Dr. Koebbe's testimony was based entirely on his background and experience. Plaintiffs and Dr. Koebbe failed to support. his standard of care testimony with

supporting literature; and they similarly failed to establish that Dr. Koebbe's standard of care opinion was the product of any other reliable principle or methods. As such, his testimony was not admissible under MRE 702.

In his deposition, Dr. Koebbe testified that perforating the sigmoid colon is an extremely rare complication during XLIF procedures and that, because that type of injury is so rare, "more likely than not, an instrument went awry or something apparent that would, to me, violate the standard of care." Consequently, Dr. Koebbe's standard of care opinion amounted to concluding that the breach of the standard of care was based solely on the unlikelihood of such an injury. Dr. Koebbe's opinion may well be correct, as the trial court noted, as rare injuries during medical procedures are undoubtedly frequently the result of malpractice, and it may even be the case that the more rare a complication, the more likely it was due to malpractice. But Dr. Koebbe's standard of care opinion testimony was based entirely on his and his assumptions in that regard, solely as a result of his own background and experience. Indeed, at his deposition, Dr. Koebbe testified that he conducted a search for relevant medical literature, but only to confirm his preexisting notion that an injury to the sigmoid colon during such surgery is extremely unusual; Dr. Koebbe could not find any medical literature to support his standard of care opinion that *any* injury to the sigmoid colon during such surgery was *ipso facto* outside the standard of care, and in fact his research supported the opposition conclusion—although such injuries are in fact very rare, they are not non-existent. Even more to the point, no such articles or other supporting methodology were provided to the trial court before it granted summary disposition to defendants.

Consequently, at the summary dispositions stage, the information before the trial court established that Dr. Koebbe's standard of care opinion was based solely on his own knowledge and experience. As such, Dr. Koebbe's opinion was not based on any methodology other than his bare assertion that he had never heard of such an injury, and therefore, he would conclude that any such injury was caused by malpractice. But plaintiff, and by extension Dr. Koebbe, failed to establish that this opinion was shared by the broader medical community or that it was in any way a reliable method for identifying malpractice. Indeed, and even apart from the application of the *Daubert* standard, Michigan has long held that the ipse dixit of an expert is insufficient to establish the standard of care in medical malpractice cases. See *Ballance v Dunnington*, 241 Mich 383, 386-387; 217 NW 329 (1928) ("The standard of care, skill, and diligence required of an X-ray operator is not fixed by the ipse dixit of an expert, but by the care, skill, and diligence ordinarily possessed and exercised by others in the same line of practice and work in similar localities."). Furthermore, MRE 702 is not fulfilled by an expert simply having *a* methodology used to determine his or her expert opinion; rather, MRE 702 requires a showing that "the testimony is the product of *reliable* principles and methods." MRE 702 (emphasis added). Plaintiffs failed to make that showing. Consequently, at the summary disposition stage the trial court did not abuse its discretion, by concluding that Dr. Koebbe's testimony was inadmissible under MRE 702.

B. MOTION FOR RECONSIDERATION

As noted, the trial court ruled that it had "no choice" at the summary disposition stage but to rule Dr. Koebbe's proposed testimony inadmissible, because there was no basis for finding it reliable. Nonetheless, the trial court went on to invite additional briefing on the topic. The trial court stated, "However, if there is a basis for Dr. Koebbe's testimony of which the Court is unaware, the Plaintiffs are invited to file a motion for reconsideration of this opinion."

-7-

Plaintiffs did file additional material with the trial court, consisting of some medical literature. The only fact that literature established however, was that bowel injuries, such as a perforated sigmoid colon, are exceedingly rare in XLIF procedures. Although we address that literature on the merits, as did the trial court, we first pause to note that both the trial court, and this Court, could simply deny the motion because it provided nothing which could not have been provided at the time of the motion for summary disposition. This Court has previously stated that "[w]e find no abuse of discretion in denying a motion [for rehearing] resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order." *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 629-630; 750 NW2d 228 (2008) (quotation marks and citation omitted). We agree, but we nevertheless choose to address this issue on the merits.

As explained by the trial court, the medical article and abstracts plaintiffs provided did not actually directly support Dr. Koebbe's standard of care opinion that the injury to plaintiff's sigmoid colon during the December 7, 2015 surgery was malpractice per se. Rather, those articles established that such an injury is quite rare. They did not, however, make the connection between rare occurrences in surgery and malpractice on which Dr. Koebbe based his opinion. Similarly, the articles did not address whether bowel injuries were "acceptable" or "unacceptable" complications of XLIF surgeries. Indeed, these articles did not even address medical malpractice or the standard of care; they only collected statistics on the numbers of incidences of such injuries. As such, we do not see how they could possibly support an argument that Dr. Koebbe's standard of care opinion was the product of reliable principles and methods. While Dr. Koebbe used the conclusions from these articles regarding the rarity of sigmoid colon injuries during XLIF surgeries to bolster his standard of care opinion, they failed to establish that Dr. Koebbe used any methodology to form his opinion, or that if he did so such methodology was reliable.

Finally, we additionally note that the trial court gave plaintiffs every opportunity to cure the deficiencies in Dr. Koebbe's testimony. Indeed, the trial court even invited plaintiffs to raise the issue on reconsideration and specifically asked plaintiffs to provide documentary support for Dr. Koebbe's standard of care testimony. By doing so, the trial court told plaintiffs what it deemed necessary to make Dr. Koebbe's expert testimony admissible. Nevertheless, plaintiffs still failed to establish that Dr. Koebbe's standard of care testimony was based on reliable methods, and defendant countered it with expert opinions stating that Dr. Kibbe's opinion and methodology were unreliable. Thus, the trial court certainly did not abuse its discretion by denying plaintiffs' motion for reconsideration.

## IV. CONCLUSION

For the reasons stated in this opinion, the trial court's orders granting summary disposition to defendants and denying plaintiffs' motion for reconsideration are affirmed. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Michelle M. Rick